IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BRIAN JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL NO. 04-761-MJR |
| | ) | |
| ROGER E. WALKER, JR., SHERRY HILE, JASON GARNETT, LT. HODGES, LT. CAINE, C/O JENKINS, MAIL ROOM OFFICER JOHN DOE, JOYCE HOSKINSON, PAMELA MORAN, JANIS JOKISCH, J. MENSING, LT. WAITZ, MAJOR HARRIS and SHARON McCORKLE, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff, currently an inmate in the Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff previously was granted leave to proceed *in forma pauperis*, and he has tendered his initial partial filing fee as ordered. In this action, Plaintiff sets forth twelve separate claims, as summarized here for clarity.

**COUNT 1:** Against Defendants Garnett and Walker for unjustified cell searches and destruction of his property, in violation of his rights under the Fourth and Fourteenth Amendments.

**COUNT 2:** Against Defendants Garnett, Walker and Hile for tampering with his mail, in violation of his rights under the First Amendment.

**COUNT 3:** Against Defendants Garnett, Hodges, Walker and Hile for unfairly placing him in administrative segregation, in violation of his rights under the Fourteenth Amendment.

**COUNT 4:** Against Defendant Caine for harassment, in violation of his rights under the Eighth Amendment.

**COUNT 5:** Against Defendants Garnett, Walker and Hile for racial segregation, in violation of his rights under the Fourteenth Amendment.

**COUNT 6:** Against Defendants Doe and Hoskinson for interfering with his legal mail, in violation of his rights under the First Amendment.

**COUNT 7:** Against Defendants Garnett, Moran, Walker and Hile for improperly addressing his grievances, in violation of his rights under the Fourteenth Amendment.

**COUNT 8:** Against Defendant McCorkle for interfering with his access to the courts, in violation of his rights under the First Amendment.

**COUNT 9:** Against Defendant Jokisch for violating his rights under FOIA and the Eighth Amendment.

**COUNT 10:** Against Defendants Mensing, Waitz, Harris and Garnett for excessive force and wrongful placement in segregation, in violation of his rights under the Eighth and Fourteenth Amendments.

**COUNT 11:** Against Defendants Garnett, Walker and Hile for deliberate indifference to his serious medical needs, in violation of his rights under the Eighth Amendment.

**COUNT 12:** Against Defendants Garnett, Walker, Hile and Harris for placing him in controlled segregation, in violation of his rights under the Eighth and Fourteenth Amendments.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in

fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; this action is legally frivolous and thus subject to summary dismissal.

## COUNT 1

Plaintiff's first claim involves daily "cell compliance checks" at Lawrence Correctional Center, which he claims are actually cell shake-downs in which his property is damaged or confiscated. Due to these regular searches, Plaintiff has had to throw out over $300 worth of food which was contaminated or destroyed, and he has spent close to $100 on laundry detergent to wash his clothes that were dirtied by officers' muddy boots and shoes.

The only constitutional right that might be implicated by these facts is Plaintiff's right, under the Fourteenth Amendment, to be free from deprivations of his property by state actors without due process of law. To state a claim under the due process clause of the Fourteenth Amendment, Plaintiff must establish a deprivation of liberty or property *without due process of law*; if the state provides an adequate remedy, Plaintiff has no civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILCS 505/8 (1995). Accordingly, Plaintiff has no claim under Section 1983, and Count 1 is dismissed from this action with prejudice.

## COUNT 2

Plaintiff's next claim is that Defendants Garnett, Walker and Hile allow prison staff to open and screen all inmates' incoming and outgoing mail, and that often the prison staff tampers with or

destroys grievances contained in that outgoing mail.

> Inmates have a First Amendment right both to send and receive mail, *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999), but that right does not preclude prison officials from examining mail to ensure that it does not contain contraband, *Wolff v. McDonnell*, 418 U.S. 539, 576, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Rowe*, 196 F.3d at 782.

*Kaufman v. McCaughtry*, 419 F.3d 678, 685 (7th Cir. 2005).

Courts have consistently held that searches of prisoners' mail is permissible for security purposes, such as searching for contraband, escape plans, and the like. *See Rowe*, 196 F.3d at 782 ("prison security is 'a sufficiently important governmental interest to justify limitations on a prisoner's first amendment rights' "); *Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir. 1986) ("provisions of this type do not impermissibly intrude on first amendment rights"); *Smith v. Shimp*, 562 F.2d 423, 425 (7th Cir. 1977).

As for his claim regarding the grievances, "a state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982).

Finally, Plaintiff has not made any showing that he was harmed in any way by the screening of his mail. Thus, he has not alleged a viable constitutional violation, and Count 2 is dismissed from this action with prejudice.

## COUNT 3

Plaintiff claims that in April 2004, he wrote to Defendant Garnett complaining that Defendants Caine and Jenkins had called him racist names, and that Jenkins threatened to beat him. In that letter, Plaintiff also advised Garnett that Caine and Jenkins had, in fact, "beat on him for no

reason" and that Plaintiff would defend himself. Based on that letter, Garnett and Hodges placed him in control segregation pending investigation of his allegations; apparently they felt that he was making false accusations against Caine and Jenkins. Plaintiff spend nine days in administrative segregation, during which he felt compelled to declare a hunger strike. Hodges and Garnett then agreed to release him from segregation if he came off the hunger strike. Plaintiff states that he never received a disciplinary ticket from this incident, nor did he receive a copy of the investigation report as required by I.D.O.C. regulations. The basis for this claim, therefore, is simply Plaintiff's displeasure at being placed in segregation pending investigation of his complaints against Caine and Jenkins.

Illinois statutes and correctional regulations do not place limitations on the discretion of prison officials to place inmates in administrative segregation, including investigative or temporary lockdown or confinement and involuntary protective custody. *See generally* 20 Ill. Admin. Code §§ 504.40, 504.660. Accordingly, there is no liberty interest implicated by an inmate's placement in these forms of segregation. *Williams v. Ramos*, 71 F,.3d 1246, 1248 (7th Cir. 1995); *see generally Sandin v. Conner*, 515 U.S. 472, 483 (1995). Accordingly, Plaintiff has no constitutional claim based on these events, and Count 3 is dismissed from this action with prejudice.

## COUNT 4

On or about April 10, 2004, Defendants Jenkins did a cell check and discovered that Plaintiff's shoes were not in his property box as required by policy. Jenkins began to confiscate the shoes, and a verbal altercation ensued in which Jenkins directed racial epithets at Plaintiff. Upon Plaintiff's agreement to place the shoes in his property box, the shoes were returned to him, and no disciplinary ticket was issued. However, Plaintiff alleges that after this incident, Jenkins harassed him on numerous occasions.

Isolated, infrequent incidents of verbal abuse that do not give rise to an Eighth Amendment claim. *See, e.g., Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997); *Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992).

> The use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution. *See Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987); *accord Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir.), *clarified on rehearing*, 186 F.3d 633 (5th Cir. 1999). Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (per curiam) (Eighth Amendment); *Patton*, 822 F.2d at 700 (due process); *Williams*, 180 F.3d at 705-06 (equal protection).

*DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000).

Although the Court does not condone name-calling, the claims in Count 4 are legally frivolous; Count 4 is dismissed from this action with prejudice.

**COUNT 5**

In this claim, Plaintiff alleges that Defendants Garnett, Walker and Hile have implemented a policy of deliberately segregating inmates by race. He claims that this segregation gives rise to more racial tension within the prison, creating an atmosphere more prone to racially-based riots among inmates. He further asserts that Defendants' motivation for this segregation is that "prison officials are paid higher wages during a racial crisis that involves inmates rioting."

In *Harris v. Greer*, 750 F.2d 617 (7th Cir. 1984), the Seventh Circuit addressed the issue of deliberately segregating inmates. In that case, the district court had dismissed, on the pleadings, the plaintiff's claim that the prison deliberately segregated black and white prisoners. The Seventh Circuit said, "[a] policy of deliberate racial segregation of prisoners would raise serious questions under the equal protection clause of the Fourteenth Amendment...And presumably the warden would be responsible for the policy and therefore answerable...in this suit under section 1983." *Id.* at 618.

The Seventh Circuit further acknowledged that, "[r]acial separation brought about by policies founded exclusively on a bona fide, colorblind concern for the safety of prisoners in our nation's dangerous prisons does not violate the equal protection clause." *Id.* However, given the prisoner's claim, the Seventh Circuit found that the district court erred when it dismissed the claim on the pleadings.

Applying the *Harris* standard to Plaintiff's claim of deliberate racial segregation, at this stage of the proceedings it would be improper to dismiss this claim as legally frivolous.

### COUNT 6

Plaintiff next alleges that on an unspecified date, Mailroom Officer Doe delivered to him a large manila envelope with a return address of "Midwest Printing Law." Inside the envelope was a legal brief from a law firm, along with a mail room receipt indicating that a floppy disk and other items had been removed from the package before it was delivered to him. He also states that the mail room had held this particular piece of mail for over 10 days before delivering it to him. Plaintiff claims that Defendants Doe and Hoskinson wrongly opened his legal mail outside his presence, in violation of his rights under the First Amendment.

As stated above in Count 2, an inmate's right to send and receive mail does not preclude prison officials from examining mail to ensure that it does not contain contraband. *Wolff*, 418 U.S. at 576; *Rowe*, 196 F.3d at 782.

> An inmate's legal mail, however, is entitled to greater protections because of the potential for interference with his right of access to the courts. *Rowe*, 196 F.3d at 782. Thus, when a prison receives a letter for an inmate that is marked with an attorney's name and a warning that the letter is legal mail, officials potentially violate the inmate's rights if they open the letter outside of the inmate's presence. *See Wolff*, 418 U.S. at 577, 94 S.Ct. 2963; *Castillo v. Cook County Mail Room Dep't*, 990 F.2d 304, 305-06 (7th Cir.1993).

*Kaufman*, 419 F.3d at 685-86. However, the inadvertent or negligent opening of an occasional legal

letter is not actionable. *See, e.g., Bryant v. Winston*, 750 F.Supp. 733 (E.D. Va. 1990). Furthermore, Plaintiff does not allege that the envelope was specifically marked "Legal Mail," and a return address of "Midwest Law Printing" is not enough to indicate to the mail room that the envelope contained "legal mail" as defined by the courts. Moreover, "merely alleging an isolated delay or some other relatively short-term . . . disruption in the delivery of inmate reading materials will not support . . . a cause of action grounded upon the First Amendment." *Rowe*, 196 F.3d at 782. Finally, Plaintiff has not made any showing that he was harmed in any way by this isolated incident. Thus, no constitutional violation occurred, and Count 6 is dismissed from this action with prejudice.

**COUNT 7**

Plaintiff alleges that Defendant Moran violated his due process rights in providing biased responses to his grievances without conducting a proper investigation. He further alleges that Garnett, Walker and Hile sanctioned Moran's behavior by approving those responses without requiring a proper investigation.

As discussed above, "a state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause." *Antonelli*, 81 F.3d at 1430; *Maust,* 959 F.2d at 648; *Shango*, 681 F.2d 1091. Accordingly, Plaintiff has not presented a viable constitutional claim, and Count 7 is dismissed from this action with prejudice.

**COUNT 8**

In this claim, Plaintiff alleges that Defendant McCorkle retained possession of some of his legal documents for more than two months. He also claims that he was not given a call pass to the law library, despite his contention that he had court deadlines to meet. He acknowledges that McCorkle cannot singlehandedly provide adequate legal services to over 1600 inmates, and he is upset because Garnett has failed to hire additional paralegals to assist her.

The Seventh Circuit uses a two-part test to decide if prison administrators have violated the right of access to the courts. *Smith v. Shawnee Library Sys.*, 60 F.3d 317 (7th Cir. 1995); *Jenkins v. Lane*, 977 F.2d 266, 268 (7th Cir. 1992). First, the prisoner must show that prison officials failed "to assist in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Jenkins,* 977 F.2d at 268 (*quoting Bounds v. Smith*, 430 U.S. 817, 828 (1977)). Second, he must be able to show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation." *Alston v. DeBruyn,* 13 F.3d 1036, 1041 (7th Cir. 1994); *Jenkins*, 977 F.2d at 268; *Shango v. Jurich*, 965 F.2d 289, 291 (7th Cir. 1992); *Howland v. Kilquist*, 833 F.2d 639, 642-43 (7th Cir. 1987); *Hossman v. Sprandlin*, 812 F.2d 1019, 1021 n.2 (7th Cir. 1987). That means that a detriment must exist, a detriment resulting from illegal conduct that affects litigation. It does not mean that any delay is a detriment. *Kincaid v. Vail*, 969 F.2d 594, 603 (7th Cir. 1992), *cert. denied*, 113 S.Ct. 1002 (1993). Regardless of the length of an alleged delay, a prisoner must show actual substantial prejudice to specific litigation. *Kincaid,* 969 F.2d at 603.

In this case, Plaintiff makes no allegations that he suffered any detriment to any specific litigation, either pending or contemplated, due to McCorkle's actions or inactions. Therefore, he has failed to state a claim upon which relief may be granted, and Count 8 is dismissed from this action with prejudice.

## COUNT 9

Plaintiff claims that Defendant Jokisch has failed to provide him with copies of the investigation report or disciplinary ticket stemming from the April 2004 incident discussed above in Count 3. He further claims that both Jokisch and Moran claim that no disciplinary ticket was

issued against him stemming from that incident.

As Plaintiff clearly admits in his Count 3 allegations, he received no disciplinary ticket stemming from that investigation. The Court is unaware of any constitutional provision mandating that Plaintiff be allowed copies of internal investigative reports that never resulted in disciplinary action, and the Court can imagine numerous reasons why an inmate should not be allowed access to those reports. These allegations do not present a viable constitutional claim, and Count 9 is dismissed from this action with prejudice.

**COUNT 10**

On September 21, 2004, Defendants Mensing and Waitz issued Plaintiff a disciplinary ticket for insolence and disobeying a direct order, which Plaintiff claims was unjustified. Plaintiff includes no information regarding the outcome of this disciplinary ticket, and thus he has failed to state a claim for deprivation of any constitutionally protected liberty interest. *See generally Sandin*, 515 U.S. at 483; *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

He further claims that Mensing pushed him into his cell on that day, causing him to bump his arm. Although an inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, not "every malevolent touch by a prison guard gives rise to a federal cause of action. . . . [the] prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001). Although the Court does not condone Mensing's actions, shoving Plaintiff into his cell is just such a *de minimis* use of force that is not actionable under the Eighth Amendment.

Accordingly, Count 10 is dismissed from this action with prejudice.

**COUNT 11**

Over the course of a few months in 2004, Plaintiff states that the water at Lawrence Correctional Center was rust-colored on occasion, although inmates were assured that the water was safe to drink. Plaintiff states that he became sick one day when the water was discolored, yet an unknown medical technician refused Plaintiff's request to be tested for radiation. Plaintiff alleges that he was exposed to this tainted water by Garnett, Walker and Hile, and all of Plaintiff's requests for copies of all "boil orders" issued by the state regarding Lawrence Correctional Center have been refused.

To state an Eighth Amendment claim based on prison conditions, an inmate must show that he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An objectively, sufficiently serious injury is one that denies the inmate "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Only extreme deprivations will support an Eighth Amendment claim. *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001). Prison officials are deliberately indifferent to deprivations suffered by inmates if they have knowledge of the condition but refuse to take steps to correct it. *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997). The Eighth Amendment requires prison officials to provide an environment free from excessive health risks, *Farmer*, 511 U.S. at 837, not a "maximally safe environment ⋯ completely free from pollution or safety hazards." *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001).

Based on these standards, the Court is unable to dismiss Count 11 against Garnett, Walker and Hile at this point in the litigation. Plaintiff also mentions Defendant Moran, who apparently did not provide a satisfactory response to his grievance about the water. However, Plaintiff has no constitutional right to receive his desired response to a grievance. *See Antonelli*, 81 F.3d at 1430;

*Maust,* 959 F.2d at 648; *Shango*, 681 F.2d 1091.  Accordingly, Moran is dismissed from Count 11 with prejudice.

**COUNT 12**

Plaintiff claims that Defendants Garnett, Harris, Walker and Hile have enforced a policy of placing inmates into controlled segregation when they declare a hunger strike.  As part of that policy, all his personal property is confiscated, and he is not permitted to receive recreation time or showers for the duration of the hunger strike.

As discussed above in Count 3, Plaintiff has no protected interest in remaining in general population.  *See, e.g., Thomas v. Ramos*, 130 F.3d 754, 760-62 (7th Cir. 1997); *Wagner v. Hanks,* 128 F.3d 1173, 1175-76 (7th Cir. 1997); *Whitford v. Boglino*, 63 F.3d 527, 533 (7th Cir. 1995) Furthermore, a temporary deprivation of access to showers or recreation does not give rise to a constitutional violation.  *Thomas*, 130 F.3d at 764 (70-day denial of outdoor exercise permissible); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) (28 day denial of outdoor recreation not a constitutional deprivation); *Davenport v. DeRobertis*, 844 F.2d 1310, 1316-17 (7th Cir.), *cert. denied*,488 U.S. 908 (1988) (one shower per week for inmates constitutionally sufficient).  This rationale is particularly true when Plaintiff himself holds the key to the yard and shower; he need only discontinue his hunger strike.  *See Rodriguez v. Briley*, 403 F.3d 952, 952-53 (7th Cir. 2005).

Finally, as stated above in Count 1, Plaintiff's remedy for deprivation of his property is found under state law; he has no remedy under federal civil rights law.  *See Hudson*, 468 U.S. at 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy); *Murdock*, 193 F.3d at 513; *Stewart*, 5 F.3d at 1036; 705 ILCS 505/8 (1995).

Accordingly, Count 12 is dismissed from this action with prejudice.

**DISPOSITION**

**IT IS HEREBY ORDERED** that **COUNT 1, COUNT 2, COUNT 3, COUNT 4, COUNT 6, COUNT 7, COUNT 8, COUNT 9, COUNT 10** and **COUNT 12** are **DISMISSED** from this action with prejudice.

**IT IS FURTHER ORDERED** that Defendants **CAINE, DOE, HARRIS, HODGES, JENKINS, JOKISCH, McCORKLE, MENSING, MORAN** and **WAITZ** are **DISMISSED** from this action with prejudice.

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for Defendants **GARNETT, HILE** and **WALKER**. The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on Defendants **GARNETT, HILE** and **WALKER** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure. Process in this case shall consist of the complaint, applicable forms 1A and 1B, and this Memorandum and Order. For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form.

With respect to former employees of Illinois Department of Corrections who no longer can be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal. Address information obtained from I.D.O.C. pursuant to this order shall not be maintained in the

court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received. If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant. Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required. Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court. He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts.  This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.

Plaintiff's motion for status (Doc. 15) is now **MOOT**.

**IT IS SO ORDERED.**

**DATED this 27th day of February, 2006.**

                                                **s/ Michael J. Reagan**
                                                **MICHAEL J. REAGAN**
                                                **United States District Judge**